José Rivera Velázquez et al., Plaintiffs and Appellants, *v.* Zoilo Santiago, Defendant and Appellee. José Rivera Velázquez et al., Plaintiffs and Appellants, *v.* Juan Torres Santiago, Defendant and Appellee.

Nos. 7971 and 7972. Argued December 1, 1939.—Decided March 19, 1940.

*Luciano Colón* and *R. Hernández Matos* for appellants.  *José I. Fernández Segarra* for appellees.

Mr. Justice De Jesús delivered the opinion of the court.

The same findings of fact and conclusions of law are involved in the two cases herein, and for this reason, and upon stipulation of the parties with the approval of the lower court, they were heard and determined upon the same evidence.  (Transcript of evidence, p. 2.)

On September 14, 1938, the plaintiffs filed their complaints in the two instant cases, respectively, in which they alleged to be the owners of a piece of rural property, which they describe, lying in the Municipal District of Ponce; that the defendants are in occupation, respectively, of two plots of ground of said property with two houses belonging to them; that they do not pay any rental or stipend whatever for the use of the land occupied by said houses; that the defendants refuse to vacate the said ground by removing the houses from it, although they have been requested to do so by the plaintiffs on several occasions: and they close by praying for an unlawful detainer judgment against each of the defendants ordering them to vacate the ground occupied by them and delivering the same to the plaintiffs, with costs and attorney's fees.

The defendants denied all the allegations of the complaint and, just as the cases were called for trial, moved for leave to add to the answer the special defense that the defendants had been in possession of the land in question on the strength of prescription for more than thirty years. The amendment was allowed over the objection of the plain-

tiffs (T. of R., pp. 7 and 8). After hearing the parties the court dismissed the complaints in both cases, basing its judgments on an opinion whose pertinent part reads as follows:

"It appears from the allegations in paragraph 3 of each complaint and from the testimony of the witnesses for the plaintiffs and also of the witnesses for the defendants, beyond any reasonable doubt, that each defendant owns a house built several years ago on land within the parcel of the plaintiffs.

"Such being the case, we think that these two cases must be settled according to the doctrine laid down by the Supreme Court of Puerto Rico in *Ermita de Nuestra Señora del Rosario* v. *Collazo,* 41 P.R.R. 594, which is fully applicable to the cases under consideration."

In support of this appeal the plaintiffs assign four errors committed by the trial court as follows:

"1. It was error for the District Court of Ponce, abusing its discretion, to allow the amendment to the answer to the complaint filed orally at the trial in the second appearance, in which the special defense of prescription was pleaded.

"2. It was error for the court to hold that the present case should be settled in accordance with the doctrine laid down by the Supreme Court of Puerto Rico in *Ermita de Nuestra Señora del Rosario* v. *Collazo,* 41 P.R.R. 594.

"3. It was error for the court to dismiss the complaint, on the ground that the same was not congruent with either the evidence or the decisions."

A consideration of the evidence heard by the trial court will place us in a position to determine whether the errors assigned by the appellants were actually committed.

██ The appellants acquired the piece of rural property described in the complaint by purchase from the Federal Land Bank of Baltimore, Puerto Rico Branch, by deed No. 103 of July 15, 1938. Upon taking possession thereof they found the defendants there in possession of two frame houses, with galvanized-iron roof, which were built by them shortly after the San Felipe cyclone, precisely on the same spots where

two other houses had been built by them about the year 1903 or 1904 and were destroyed by the said cyclone.

It appears from the evidence for the defendants that they originally built their houses in 1903 or 1904, with permission of José Joaquín Torres then owner of the property (T. of R., p. 34), in order to make it easier for them to work on the estate as tenants at will *(arrimados o agregados)* and that after the destruction of such houses by the San Felipe cyclone in 1928, they built on the same spot the houses now standing.

Based on the above facts, does a judgment of eviction lie? The appellants maintain the affirmative and in this respect they quote from the syllabi in several cases decided by this court, where it is laid down that the mere allegation of title, without substantial evidence in support thereof, is insufficient to settle the conflict of titles which is a bar to the action of unlawful detainer. The defendants rely on the decision in *Pesquera* v. *Fernández,* 16 P.R.R. 223, and the trial court, as we have seen, bases its decision on that in *Ermita de Nuestra Señora del Rosario* v. *Collazo, supra.* If, as alleged by the defendants and appellees, they are the owners of the houses which were built by them and they also own the land on which the houses stand, by extraordinary prescription, the doctrine laid down in *Pesquera* v. *Fernández, supra,* is applicable, and, therefore, the action of unlawful detainer does not lie. This is why we must take up the consideration of the present case by first determining whether the defendants have color of title, at least in regard to the building lots in controversy.

It is already established that the defendants occupied the lots in question with the consent of the owner of the estate. Such being the case, application may be made of sections 376 and 1841 of the Civil Code (1930 ed.), which read as follows:

"Section 376.—Only the possession acquired and enjoyed by a person in the belief that he is the owner can serve as a title to acquire ownership.

"Section 1841.—Possession must be in the capacity as an owner, public, peaceful, and uninterrupted."

As the defendants are not in possession of the land as owners thereof, they could only occupy the same in two ways: under contract or at sufferance. In the former case, it is evident that they can not acquire ownership by prescription, nor even attack the title of their lessor; in the latter case, as seems to be the case here, they can neither acquire such a title, because, as stated on p. 339, vol. 25, Enciclopedia Jurídica Española, a possessor at will acquires and retains the natural possession, and the person who grants the possession at will retains the legal possession. In harmony with this principle, it is stated on p. 340 of the above treatise, referring to the actions and objections available to a possessor at will, as follows:

"None against the grantor, not even that of prescription, for the simple reason that he owns in behalf of another, section 1841 of the above statute; hence, no matter how long he has had the possession, he can not acquire the right of ownership."

From the foregoing, it must be concluded that the defendants, notwithstanding their having had the possession of the respective lots for more than thirty years, have not acquired ownership title to them, and therefore their cases are distinguished from that of *Pesquera* v. *Fernández, supra,* where the latter, the defendant, was the owner of the house as well as of the lot by extraordinary prescription.

▮▮▮ Having disposed, adversely to the defendants, of their claims to the lots, their cases are in principle similar to that in *Ermita de Nuestra Señora del Rosario* v. *Collazo, supra,* relied upon for the judgment appealed from. The fact of the recording in the latter case of the house in the registry of property should not render it distinct from those at bar, for the fact of the recording only tended to strengthen the title of the defendants to the house, a fact which is not disputed but is rather expressly admitted by the plaintiffs, who allege that the houses belong to the defendants.

In *Ermita de Nuestra Señora del Rosario* v. *Collazo,* *supra,* this court, in reversing the judgment, expressed itself as follows:.

"From the foregoing we must conclude that as, according to the said judgment, the appellant is the owner of the house standing on the lot of the appellee, there is a conflict of titles between the parties, because, although the house is an accessory to the land, our Civil Code recognizes the right of any person who builds on another's land not to be deprived of his property without the proper compensation if he build in good faith, and these questions can not be disposed of in such a summary proceeding as that of unlawful detainer."

Although the defendants can not claim to be the owners of the land on which their houses stand, inasmuch as they have only enjoyed the material possession of the ground while the plaintiffs have retained the legal possession, they are none the less builders in good faith, as defined by Sánchez Román, because they built their houses with the consent of the owner of the ground. In specifying the rights of the person who builds on another's land, the above text writer expresses himself as follows:

"*Building:* It is one of the ways giving rise to the right of accession where, in constructing a building, either the ground, or the materials, or both, do not belong to the builder.

"There are rules of common application to *building, planting and sowing,* which are: 1, it is presumed that everything incorporated into the ground accrues to the latter as principal, the condition of *accessory* being applied to that which is incorporated or added; 2, that as nobody should enrich himself to the injury of another, the value of the materials, plants, or seeds and expenses of building, planting or sowing duly shown, should be reimbursed to the owner thereof; 3, that compensation is proper also where there has been bad faith on the part of the builder, planter or sower, provided the injury done is proven; and 4, that bad faith need special proof, as good faith is presumed *juris tantum.*

"Under the above principles, and confining ourselves to *building,* three distinct cases may be suggested, viz.: building on another's

land with one's own materials; building on one's own ground with another's materials; or building on another's land with materials not one's own.

1. If it is built in good faith on another's land with one's own materials, the building *always* accrues to the owner of the ground, but the owner of the materials is entitled to claim their value and the erection expenses, such right to be exercised, by way of *exception,* should the owner of the ground attempt to revendicate the accession of the structure. In case of bad faith, the builder forfeits the value of the materials. It is well to state that this is a doctrine of the commentators rather than of the law; inasmuch as both the Roman law, and the Partidas, which are its equivalent in this matter, took into account another circumstance, namely, whether or not the builder was the possessor of the ground built upon. It was only when the *possession* and the *good faith* met that one was fully entitled to claim the value of the materials and of the work; although, however, the possessor who built in bad faith was also recognized in equity to be entitled to compensation for necessary or useful expenses, and even to claim the materials if the structure was pulled down, provided it was not shown that he meant to donate them. This latter right was also established in Roman legislation in favor of the builder in good faith who did not qualify as a possessor.

"Subsequently, the rule of law on the matter eliminated all the distinctions that had obscured it and by the common view point of text writers, although not by any direct statutory provisions prior to the Code, it has been conceived as follows: 'If the builder on another's land, whether or not a possessor, acts in good faith, he is entitled to the value of the materials and construction expenses; if he acts in bad faith he forfeits both; and, in both cases, the structure accrues to the ground.'" Sánchez Román's *Derecho Civil,* Vol. 3, pp. 93–95.

Although under the rules set forth, the houses built in good faith accrue by accession to the plaintiffs as the owners of the land, such transfer is not consummated until the plaintiffs have complied with the mutual obligation incumbent upon them to pay to the plaintiffs the whole value of the materials used by them in the building as well as the cost of the work. It is so established by sections 287, 297 and

382 of the Civil Code (1930 ed.), which literally read as follows:

"Section 287.—The ownership of property, whether movable or imovable, carries with it the right, by accession, to everything which is produced thereby, or which is united thereto or incorporated therewith, either naturally or artificially.

"Section 297.—The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in section 382 and 383 of this Code, and to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent.

"Section 382.—Necessary expenses are refunded to every possessor; but only the possessor in good faith may retain a thing until such expenses are made good to him.

"Useful expenses are refunded to the possessor in good faith with the same right of retention, it being at the option of the party who has defeated him in his possession to refund the amount of the expenses or to pay the increase in the value of the thing in consequence of such expenses."

Commenting upon the obligation on the part of the owner of the land of compensating first and upon the corresponding right of the owner of the building to retain possession thereof until payment is effected, the same commentator says:

"Section 361 deals with another hypothesis, that is, that of the case in which *building, sowing or planting in good faith on another's land is done,* and accession in favor of the owner is declared unless he avails himself of the option to require the party who built or planted to pay the value of the land or the party who planted only the corresponding rent, because the crop is a transitory or temporary obstacle, and the law in such case presumes the lease, which is less violent than the sale. It should be noticed, however, that where the owner of the land built upon, sown or planted to in good faith by another, decides to avail himself of the option to acquire the work, crop or plantation, that is, that the *accession is consummated,* such juridical result shall not take place without first *compensating,* as prescribed in sections 453 and 454. Id., p. 149.

"Moreover, section 453, while imposing upon the owner or possessor with the better right reimbursement for said expenses, the

defeated possessor in good faith who made such disbursements ·is granted an important right, which is the retention of the thing until such disbursements are refunded; and likewise, the party who is required to pay them is granted the *alternative* optional right of either refunding said disbursements or paying the 'increment in the value of the thing in consequence of such expenses;' and neither of the above two important particulars,—which represent the whole contents of section 453 and which are two reciprocal and inseparable phases of such compensations for disbursements due to the possessor in good faith—, is referred to in section 361 in case of accession by reason of building, sowing or planting in good faith on another's land, in such clear, precise and sufficient terms as might be neces· sary, in order to ascertain whether the quoting of said sections and the obligation to *compensate first* on the part of the owner of the land where such accession took place in order to be able to utilize the other or to acquire the work, in view of its reference to section 453, *supra,* must be understood as being accompanied by the *right to retain* on the part of the party who built, sowed or planted in good faith on another's land, which might turn out to be somewhat excessive juridically speaking, and whether the owner of the land may also have the option to pay, in lieu of the useful expenses, for the increase in value of the thing in consequence of such expenses. This latter seems to us uquestionable, because it is one of the two forms of compensation established by section 453; and as to the former, that is, the right *to retain* in cases of accession, we also decide in favor of the affirmative, either by reason of the express reference to said section made in section 361, or because of the import to be attached to the word *first* preceding the words *paying the indemnity specified.''* Id., pp. 150–151.

We do not think it is necessary to prosecute two actions successively, one to fix first the amount of compensation and the other then to claim the building. Applying by analogy the doctrine laid down in *Nicorelli* v. *Ernesto López & Cía.,* 26 P.R.R. 49, regarding the ·right to determine in a single· action the time for the payment of an obligation with no· time specified for its maturity and at the same time to· demand payment thereof, a single action could serve to· claim the building and at the same time to fix the amount· of the aforesaid compensation that must first be paid.

As it does not appear from the record that the parties agreed as to the amount of such claims, and as such claims can not be determined in the summary proceeding of unlawful detainer, it is evident that the complaints must be dismissed, without prejudice to bringing the proper ordinary action in which the rights of both parties might be determined.

Of course, in the case at bar we are assuming that there has not been any agreement between the parties establishing their respective rights regarding the building done. If the parties, forestalling a situation like the present, had agreed beforehand as to their respective rights and obligations as regards the buildings, such agreement would have constituted the law as between them and they would have now to abide by the terms then agreed upon. No fairly farsighted person is expected to take the risk of building on another's land, nor would the owner thereof allow such person to build thereon, without first agreeing upon terms from which to determine at any time any differences that might arise between them.

Having reached the conclusion that the plaintiffs own the land, the error of the court, if any, in allowing the defendants to amend their answer so as to allege that they acquired the ground by prescription, was not prejudicial to the rights of the plaintiffs and, therefore, can not be ground for reversal.

From the foregoing, therefore, the appeals shall be dismissed and the judgments appealed from affirmed.

Mr. Justice Wolf, dissented.